1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MIGUEL ALBARRAN,

                Petitioner,

    v.

DAN WHITE,

                Respondent.

CASE NO. 3:22-cv-5788

ORDER ADOPTING REPORT AND
RECOMMENDATION

## 1.  INTRODUCTION

This matter comes before the Court on the Report and Recommendation of the Honorable Michelle Peterson, United States Magistrate Judge, and petitioner Michael Albarran's objections to the Report and Recommendation ("R&R"). Dkt. Nos. 15, 17. Judge Peterson recommended the dismissal of Albarran's petition as untimely. Dkt. No. 15. Having reviewed the petition, the R&R, Albarran's later filings, and being otherwise fully informed, the Court adopts the R&R and DISMISSES Albarran's habeas action for the reasons stated below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

## 2. BACKGROUND

In 2014, following a jury trial, Albarran was convicted of child rape in the second degree. *Id.* at 2. He is serving a life sentence with a minimum term of confinement of 25 years at Monroe Correction Facility in Monroe, Washington. *Id.* at 1. The R&R accurately states the relevant facts and procedural history of Albarran's criminal case, so the Court will not restate the complete background here. *Id.*

Albarran petitioned the Court under 28 U.S.C. § 2254 for a writ of habeas corpus, alleging his judgment and sentence violated his due process and Sixth Amendment rights. Dkt. No. 1. The state responded that his petition was untimely under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d). Dkt. No. 6.

In the R&R, Judge Peterson thoroughly explained that once Albarran's conviction became final on February 8, 2017, the one-year statute of limitation period for petitioning for federal habeas relief began to run under AEDPA. Dkt. No. 15 at 4-5. The limitations period was tolled when Albarran timely moved for post-conviction relief in state court on December 8, 2017, but it began to run again when the state court proceedings concluded on July 19, 2022. *Id.* at 5. Thus, the deadline for Albarran's habeas petition was September 20, 2022. *Id.* Albarran did not file his petition, however, until October 14, 2022—24 days too late. *Id.* (Albarran conceded that his petition was untimely and the result of his attorney miscalculating the filing date. Dkt. No. 13 at 1.) Judge Peterson concluded that a "garden variety" mistake by counsel, such as miscalculating a filing date, did not entitle Albarran to equitable tolling. Dkt.

No. 15 at 5–11. Likewise, Judge Peterson concluded that Albarran's claimed "cognitive limitations" and "inordinate[] dependen[ce] on counsel" did not warrant equitable tolling either. *Id.* at 7.

Albarran filed a timely objection to the R&R on April 10, 2023. Dkt. No. 17 at 1.

## 3.  ANALYSIS

### 3.1  Legal standard.

The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition." *Id.* A party properly objects when the party files "specific written objections" to the report and recommendation as required under Federal Rule of Civil Procedure 72(b)(2). Albarran objected to the recommendation that equitable tolling does not apply. Dkt. No. 17.

The Court therefore reviews de novo Judge Peterson's recommendation that Albarran is not entitled to equitable tolling.

### 3.2  Albarran's objections.

Albarran does not challenge Judge Peterson's conclusion that his petition was untimely. Instead, he "objects to the recommendation that equitable tolling does not apply, and all findings related to that recommendation." Dkt. No. 17 at 3. He also objects because the court did not "address[] the merits of [his] constitutional claim." *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

A habeas petitioner is entitled to equitable relief only if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The diligence required is "reasonable diligence." *Id.* at 653. "[T]he requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude application of equitable tolling.'" *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008)). The petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

### 3.2.1  Albarran acted diligently in pursing his petition.

Turning to the first element, the Court finds that Albarran was diligent in pursuing his habeas petition. "Reasonable diligence requires only 'the effort that a reasonable person might be expected to deliver under his or her particular circumstances.'" *Fue v. Biter*, 842 F.3d 650, 654 (9th Cir. 2016) (citing *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011)). Here, Albarran retained—and maintained— counsel to file his habeas corpus petition. *See*, *generally*, Dkt. No. 14. When his attorney was about to withdraw, Albarran—as well as his family—implored his counsel to continue to represent him on his petition. *Id.* ¶ 7. Albarran's counsel then advised "him the habeas corpus petition was due in mid-October." *Id*. Albarran filed

1  his petition on October 14, 2022, 24 days late. Dkt. No. 15 at 5. When Albarran

2  learned that his attorney had filed his petition late, he conferred with him soon

3  after presumably to discuss a plan. Dkt. No. 14 ¶ 11.

4          The fact that Albarran was unaware that his counsel was incorrect about the

5  deadline for his petition cannot be held against him. "Reasonable diligence does not

6  require a petitioner to identify the legal errors in his attorney's advice and

7  thereupon fire the attorney because such errors would have been evident to a

8  trained lawyer, nor does it require a petitioner to proceed *pro se* without an obvious

9  reason for doing so." *Doe v. Busby*, 661 F.3d 1001, 1014 (9th Cir. 2011) (citing *Brown*

10 *v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002)). Indeed, Albarran continued to act

11 diligently after discovering that his petition was untimely, as shown by his

12 continued contact with counsel and objections. *See* Dkt. Nos. 13, 17.

13         Next, the Court must consider whether extraordinary circumstances

14 prevented Albarran "from making a timely filing that equitable tolling may be the

15 proper remedy." *Smith v. Davis*, 953 F.3d 582, 600 (9th Cir. 2020). "In evaluating

16 whether an 'extraordinary circumstance stood in [a petitioner's] way and prevented

17 timely filing,' a court is not bound by 'mechanical rules' and must decide the issue

18 based on all the circumstances of the case before it. *Id.* (quoting *Holland*, 560 U.S.

19 at 649–50). Albarran argues that his "attorney's failure to research and learn the

20 correct deadline for filing a habeas corpus" and his own "cognitive limitations"

21 satisfy this inquiry. Dkt. No. 13 at 6. The Court disagrees.

22

23

1

### 3.2.2  Albarran's attorney engaged in "garden variety" neglect.

2

3      The Court agrees with the R&R's conclusion that the mistake of Albarran's

4  attorney in calculating the habeas deadline constituted "garden variety" neglect,

5  which cannot alone establish a basis for equitable tolling. Dkt. No. 15 at 7 (citing

6  *Holland*, 560 U.S. at 651–2; *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007)).

7  Indeed, miscalculating a due date has been deemed to be a "run-of-the-mill

8  mistake[]" that does "not rise to the level of extraordinary circumstances." *Luna v.

9  Kernan*, 784 F.3d 640, 646 (9th Cir. 2015) (citations omitted). Albarran argues

10  otherwise, relying on *Benjamin v. Kelly*, No. 21-35260, 2022 WL 1285040 (9th Cir.

11  Apr. 29, 2022), which he says represents a "move away from a hyper-technical

12  application of equitable tolling." *See* Dkt. Nos. 13 at 9-11; 17 at 12. But *Benjamin* is

13  an unpublished case and of no precedential value. It is also distinguishable, as

14  Judge Peterson points out, so it does not carry persuasive weight either. Dkt. No. 15

15  at 9. In the end, Albarran offers no argument or evidence establishing that the acts

16  or omissions of his attorney "transcend[ed] garden variety negligence and enter[ed]

17  the realm of 'professional misconduct,'" such as *knowingly* misleading him to believe

18  that a timely petition had been or would be filed. *Luna*, 784 F.3d at 646. Here,

19  Albarran's counsel simply made a mistake—a costly one—but garden variety,

20  nonetheless.

21

22

23

### 3.2.3  Albarran's claimed cognitive challenges do not justify equitable tolling.

Albarran argues that his purported "cognitive challenges, and his complete reliance upon counsel" distinguish his case from others involving an attorney's calendaring error. Dkt. No. 17 at 13. The R&R concludes, however, that Albarran's "argument that his cognitive limitations made him inordinately dependent on counsel likewise does not establish a basis for equitable tolling." Dkt. No. 15 at 10. The Court agrees, but further explanation is warranted.

A petitioner must satisfy two factors for equitable tolling because of mental impairment:

1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either

   a. petitioner was unable rationally or factually to personally understand the need to timely file, or
   b. petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Milam v. Harrington*, 953 F.3d 1128, 1132 (9th Cir. 2020) (citing *Bills v. Clark*, 628 F.3d 1092, 1099–1100 (9th Cir. 2010)). "Equitable tolling for a mental impairment does not 'require a literal impossibility,' but instead only 'a showing that the mental impairment was "a but-for cause of any delay."'" *Id.* at 1132 (quoting *Forbess v. Franke*, 749 F.3d 837, 841 (9th Cir. 2014)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Albarran does not meet the *Milam / Bills* standard. In describing his claimed mental impairment, Albarran speaks in conclusory fashion, stating only that his "cognitive and comprehension challenges made him more reliant upon his attorney." Dkt. No. 17 at 2. He offers no medical diagnosis, treatment, or history to argue this point, and relies instead on stray anecdotes about low reading comprehension and confusion. But state court filings show that Albarran is working toward his GED and that he has never been on disability or received disability pay for a cognitive deficit or mental disability. Dkt. No. 8 at 40. In fact, Albarran's former-defense counsel remembers him as "articulate, [well-spoken], and . . . a fairly sharp individual." *Id.*

Albarran's current attorney recounts how Albarran "remained adamant [that] he wanted to continue fighting this conviction and would not stop until the conviction was reversed" and that he was "surprised and disappointed to learn that the petition was filed late after [his counsel] told him it would be filed on time." Dkt. No. 14, ¶¶ 4, 11. This demonstrates that Albarran understood the need to timely file a petition. To be fair, Albarran's current attorney also states that "Albarran could never figure out how to file a petition on his own," but he does not attribute this to any mental impairment on Albarran's part. Dkt. No. 14, ¶ 10. Similarly, Albarran's claims about needing to have instructions repeated because of his slow comprehension stop short of claiming an inability to follow or track instructions at all.

Albarran's primary hurdle is that he has not alleged—much less demonstrated—that any claimed cognitive deficit was the "but-for" cause of his

untimely habeas petition. *Milam,* 953 F.3d at 1133. Put differently, even crediting Albarran's description about his limitations, it is clear under the "totality of circumstances" that he *could* have met the filing deadline, but that he did not because of his attorney's mistake. *Id.* at 1132-33.

Albarran is thus not entitled to equitable tolling on the grounds of attorney conduct and mental impairment. The Court is sensitive to the fact that this is a harsh result, but equitable tolling is justified only in extraordinary circumstances, and under existing Ninth Circuit precedent, Albarran's case does not rise to that level.

## 4.  CONCLUSION AND ORDER

For these reasons, the Court ORDERS:

1.  The Court ADOPTS the Report and Recommendation. Dkt. No. 15.

2.  Petitioner's petition and this matter are DISMISSED with prejudice as untimely.

3.  In accordance with Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability is GRANTED as to the issue of equitable tolling.

It is so ORDERED.

Dated this 29th day of March, 2024.

Jamal N. Whitehead
United States District Judge

ORDER ADOPTING REPORT AND RECOMMENDATION - 9